## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Modesto Echezarreta, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No: 10 C 50092 |
| | ) | |
| Joanna Kemmeren, et al., | ) | |
| | ) | |
| *Defendants.* | ) | Judge Frederick J. Kapala |

### ORDER

Defendants' motion to dismiss [95] is granted in part and denied in part. The official capacity claims against defendants Funk, Shute, Dahiya, and Ngu are dismissed. All claims against defendants Appleyard, Mesrobian, and Wexford are dismissed.

### STATEMENT

Plaintiff Modesto Echezarreta, an inmate at the Dixon Correctional Center ("Dixon"), brings the instant lawsuit pursuant to 42 U.S.C. § 1983 against defendants, employees of Dixon and of Wexford Health Sources, Inc. ("Wexford"), a private corporation which provides medical services at Dixon. Plaintiff alleges that defendants were deliberately indifferent to his serious medical conditions, constituting cruel and unusual punishment and a violation of his rights secured by the Eighth and Fourteenth Amendments. He also alleges that defendants retaliated against him for airing his grievances about his condition and treatment through the prison grievance system. Currently before this court is defendants' motion to dismiss the amended complaint. For the following reasons, defendants' motion is granted in part and denied in part.

### I. BACKGROUND

Plaintiff was, and is, an inmate in the Illinois Department of Corrections at Dixon. Prior to this lawsuit, plaintiff developed the following medical conditions affecting his back and feet, all of which plaintiff claims are objectively observable to prison and healthcare staff:

(1) Disc herniation, degeneration, large generalized bulging, and spinal stenosis to the L3-L4, L4-L5, and L5-S1 discs with compression of the right nerve root at the L5-S1 nerve distribution; diagnosed in March 2002.

(2) A medical condition involving his feet, including plantar fasciitis; diagnosed in August 2009.

(3) A seven-to-nine millimeter bone fragment lodged between the subtibial or subtalar joint of his right foot sustained as a result of a fall that occurred in 2005 while he was an inmate at Hill

Correctional Center; diagnosed in August 2009.

Plaintiff initiated this lawsuit on December 21, 2012, against various employees of Dixon and Wexford, as well as against Wexford as a corporate entity. Plaintiff claims that defendants in their official and individual capacities remained deliberately indifferent to serious and continuing medical conditions, in violation of plaintiff's constitutional right to be free from cruel and unusual punishment, against both non-medical Dixon staff (Count I) and the medical staff, including Wexford itself (Count II). Furthermore, plaintiff alleges that certain actions of defendants constituted retaliation for plaintiff's exercise of his rights under the First and Fourteenth Amendments, when he attempted to pursue administrative remedies through the prison grievance system, again against both non-medical Dixon staff (Counts III, V, and VI) and the medical staff, including Wexford itself (Count IV).

Plaintiff alleges that from April 2008 to the present, he repeatedly used the prison grievance system to air his complaints about the purportedly inadequate medical treatment he received, and that defendants failed to alleviate any pain or provide further treatment after learning of these grievances. He claims that, "on information and belief it is the custom and practice of the Dixon Correctional Center to remain deliberately indifferent to the serious medical conditions and needs of the inmate population in order to avoid spending the money necessary to diagnose and treat said inmates' serious medical conditions and needs." Plaintiff alleges the same "custom and practice" for defendant Wexford. Currently pending is defendants' motion to dismiss, which seeks dismissal of plaintiff's official capacity claims against Wexford physicians, dismissal or bifurcation of plaintiff's claims against Wexford, dismissal of plaintiff's request for injunctive relief, dismissal of plaintiff's complaint due to improper joinder, dismissal of claims against defendants Appleyard and Mesrobian due to those defendants' deaths, and dismissal of claims against defendant Ngu as untimely.

## II. ANALYSIS

### A. Standard of Review

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, plaintiff's complaint must contain a short and plain statement of the claim, demonstrating that he is entitled to relief. Fed. R. Civ. P. 8(a)(2). The court draws all reasonable inferences in the plaintiff's favor and accepts all well-pleaded allegations as true, as long as the allegations raise a right to relief "above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Pisciotta v. Old Nat'l. Bancorp, 499 F.3d 629, 633 (7th Cir. 2007).

### B. Official Capacity Claims & Claims against Appleyard and Mesrobian

Plaintiff brings claims against several Wexford physicians, defendants Funk, Shute, Dahiya, and Ngu, in both their individual and official capacities. Defendants move to dismiss the claims against these Wexford physicians in their official capacities, as these claims are redundant with the Monell claim asserted against Wexford.[1] See Castronovo v. Cnty. of Winnebago, 11 C 50046, 2011

---

[1] Plaintiff also asserts claims against a "Mughall" in Counts II and IV along with several other Wexford physicians, but this individual is not listed as a party in the caption nor is it mentioned in

2

WL 5239232, at *3 (N.D. Ill. Nov. 1, 2011) ("It makes no practical difference that the individual defendants are sued in their official capacities; the city is liable for the official actions of its senior policy-making officials. As misbehaving employees are responsible for their own conduct, it is redundant to sue both the county and individual county board members acting in their official capacity." (alternations, citation, and quotation marks omitted)). Defendants also move to dismiss all claims against defendants Appleyard and Mesrobian, as both of those defendants are deceased. See Fed. R. Civ. P. 25(a)(1). In his response to the motion to dismiss, plaintiff concedes that dismissal of the official capacity suits and the claims against Appleyard and Mesrobian is proper. Accordingly, the court grants defendants' motion to dismiss the official capacity claims against Funk, Shute, Dahiya, and Ngu, and all claims against Appleyard and Mesrobian.

### C. Claims against Wexford

Defendants also argue that plaintiff's amended complaint should be dismissed as against Wexford, as plaintiff has failed to allege a plausible claim. The Supreme Court has held that there is no vicarious liability based on employee misconduct for government entities, or private entities acting to fulfill a government duty, and instead the employer can only be sued directly for its own misconduct. See Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). To hold a defendant, such as Wexford, directly liable under Monell, plaintiff must establish

> evidence of (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom

---

plaintiff's recitation of the facts. Plaintiff, in his response to the motion to dismiss, indicates that the failure to include whomever Mughall is in the facts and caption was an inadvertent oversight and requests an opportunity to amend his complaint to include that information. Plaintiff has also broadly requested the right to amend as to any claim dismissed by this court. However, plaintiff has failed to comply with this court's standing order concerning such requests by explaining how he would amend his complaint so that this court can determine if permitting such an amendment would be futile. See This Court's Standing Order on Motions dated September 14, 2010, available at http://www.ilnd.uscourts.gov/home/Judges.aspx ("In the case of a Rule 12(b)(6) motion, if a plaintiff wishes to retain an opportunity to amend the complaint following an adverse decision of this court, plaintiff should request the court's leave to replead in its response to defendant's Rule 12(b)(6) motion and inform the court of how, consistent with the requirements of Rule 11, it would amend the complaint. If a plaintiff fails to request such relief in its response, and this court finds in favor of the defendant, the dismissal will be with prejudice unless the court determines there are exceptional circumstances which would warrant leave to amend." (citations omitted)). Accordingly, plaintiff's request for leave to amend is denied. The court also notes that this case has been pending already since April 2010, and has already had one amended complaint permitted as recently as 2012. Allowing amendment and the filing of a second amended complaint with a new defendant who has not been served up to this point would only increase the delay in this already languishing case.

or usage with the final force of law; of (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

Lewis v. City of Chi., 496 F.3d 645, 656 (7th Cir. 2007) (quoting Roach v. City of Evansville, 111 F.3d 544, 548 (7th Cir. 1997)). Accordingly, to state a plausible Monell claim, plaintiff must assert factual allegations that, when accepted as true, state a right to relief based on the existence of one or more of the aforementioned elements, and must offer neither legal conclusions nor a recitation of the elements of the cause of action. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also McCauley v. City of Chi., 671 F.3d 611, 618 (7th Cir. 2011) (stating that plaintiff must allege facts that enable the court to draw the reasonable inference that defendant established a policy or practice causing deprivation of plaintiff's constitutional rights).

However, plaintiff offers only legal conclusions and a recitation of the elements of his cause of action, as expressly prohibited by Iqbal, in its allegations supporting the deliberate indifference claim in Count II against Wexford. See Iqbal, 556 U.S. at 678. Plaintiff alleges, "That on information and belief it is the custom and practice of Defendant WEXFORD to remain deliberately indifferent to the serious medical conditions and needs of the inmate population in order to avoid spending the money necessary to diagnose and treat said inmates' serious medical conditions and needs." This assertion constitutes the kind of "recitation of the elements" referred to in Iqbal and McCauley, as plaintiff merely draws language of "custom and practice" from Monell to fit the elements of the claim. See McCauley, 671 F.3d at 617. Plaintiff does not assert any additional facts to elucidate any "customs" or "practices;" rather, he leaves the claims unsupported and speculative in nature. See In re Dayton, 786 F. Supp. 2d 809, 822-23 (S.D. N.Y. 2011) ("The factual allegations in the Amended Complaint regarding Monell liability are too conclusory to survive a motion to dismiss. For example, the Amended Complaint states that the City of Middletown has, on information and belief, 'negligently failed to properly administer its agencies[,] departments [,] personnel[,] and the like in regard to the maintenance, design, supervision and control over those accused and detained . . . .' (Am. Compl. ¶ 25; see also id. ¶¶ 26, 42–44.) This boilerplate recitation of the elements of a Monell claim is insufficient to survive a motion to dismiss."). The claim in Count IV against Wexford for retaliation is not supported by any factual allegations at all. Accordingly, the court grants the motion to dismiss both Monell claims against Wexford.

### D. Joinder

Defendants also move to dismiss plaintiff's complaint by asserting that it violates Federal Rules of Civil Procedure 18 and 20 by improperly joining claims and defendants in a suit. Defendants contend that plaintiff's claims involve unrelated issues and medical conditions and that defendants are improperly joined.

Rule 18(a) states that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Rule 20 states: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20. The Seventh Circuit in George v. Smith held that twenty-four defendants and over fifty claims were

improperly joined in plaintiff's "buckshot" complaint, as an attempt to avoid multiple filings and fee provision of the Prison Litigation Reform Act. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); 28 U.S.C. § 1915. "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . . ." George, 507 F.3d at 607.

Plaintiff alleges that all defendants were deliberately indifferent to his three separate serious medical conditions and that their continued indifference constitutes retaliation toward plaintiff for his attempts to air his complaints through the prison grievance system. By plaintiff's own contention, the injuries are unrelated, were sustained on separate occasions, and required different care or attention from different defendants at different stages in time. Regardless, it is in the interest of expediency to allow plaintiff's claims and defendants to be joined in the instant lawsuit, given that all purported harms against plaintiff regarded the same group of injuries, arguably arising out of the same "series of transactions." Fed. R. Civ. P. 20. Moreover, plaintiff alleges retaliation based on his complaints about his medical care as a whole, which means that the entire case has a "question of law or fact common to all defendants." Id. Additionally, given the overlap between all of the issues and defendants, it is in the interest of expediency to group all defendants together for purposes of discovery. Accordingly, this court denies defendants' request to dismiss plaintiff's amended complaint due to improper joinder.

### E. Injunctive Relief

Defendants also request that plaintiff's request for injunctive relief in the form of medical treatment be stricken, given that several defendants are no longer employed at Dixon, and injunctive relief cannot be narrowly drawn consistent with 18 U.S.C. § 3626 of the Prison Litigation Reform Act. This request is denied as premature. Defendants rely in part on information not included in the complaint—that many of the medical defendants no longer work at Dixon—but at the Rule 12 stage the court is bound to accept the allegations of the complaint, which indicate that most of the physicians were and are employed by Wexford at Dixon, as true. See Iqbal, 556 U.S. at 678. It is true that at least two defendants, Ngu and Brauer, appear to no longer work at Dixon based on the allegations in the complaint, but that hardly requires striking the request for injunctive relief from the complaint as a whole. Furthermore, § 3626 specifically permits injunctive relief in prisoner suits, so long as that injunctive relief is narrowly drawn. Although defendants boldly state that it is impossible to narrowly draw any injunctive relief that may be awarded in this case, there is nothing in the complaint which supports such a contention. Should it become clear through the development of the record that certain defendants no longer work at Dixon, or that it would be impossible to narrowly draw injunctive relief for some reason, then defendants are welcome to raise this issue again at summary judgment.

### F. Statute of Limitations

Defendants contend that all complaints against defendant Ngu, a Wexford physician, should be dismissed, as they are time-barred by the statute of limitations. In response, plaintiff argues that the complaint is not untimely on its face and Ngu's conduct was part of a continuing series of violations, such that even if the complaint were untimely on its face, it would not need to be dismissed based on the statute of limitations.

Suits under § 1983 use the statute of limitations and tolling rules that states employ for personal injury claims. Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012). Illinois has a two-year statute of limitations on personal injury claims. See 735 ILCS 5/13-202. The Seventh Circuit has warned that it is "irregular to dismiss a claim as untimely under Rule 12(b)(6)."[2] Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (quotation marks omitted). This is because a plaintiff is under no duty to anticipate affirmative defenses, like a statute of limitations defense, and thus may not have pled all of the facts necessary to establish one of the many exceptions to the defense. Id.; see also Richards, 696 F.3d at 637-38. Because defendant ultimately bears the burden of proof on the defense of timeliness, only where the complaint establishes an "airtight" or "impenetrable" defense as to what would otherwise be a good claim can a defendant succeed in having a claim dismissed at the Rule 12 stage based on an affirmative defense. Richards, 696 F.3d at 637-38. Here, that has not occurred.

It is unclear whether the suit is untimely against Ngu without considering any tolling or other exceptions to the timeliness defense. Plaintiff alleges that Ngu worked at Dixon "until April[] 2008." The instant suit was filed on April 16, 2010. If Ngu treated, or failed to treat, plaintiff sometime between April 17, 2008 and April 30, 2008, then the claims against him are not time-barred. There are no allegations in the complaint which establish when in April 2008 Ngu ceased working at Dixon. Accordingly, the complaint has not established an "airtight" defense upon which defendants may rely. Thus, there is no need to address the parties' arguments concerning the continuing violations doctrine or any other form of tolling. Of course, should discovery disclose that Ngu's employment ended prior to April 16, 2010 and that plaintiff is not otherwise eligible for some kind of tolling of the statute of limitations, defendants may file a motion for summary judgment on this ground.

---

[2] Indeed, technically, a motion to dismiss based on an affirmative defense should not be brought at all until the Rule 12(c) stage, once all the pleadings have been filed. See Richards v. Mitcheff, 696 F.3d 635, 637-38 (7th Cir. 2012). However, "[t]his comes to the same thing as a dismissal under Rule 12(b)(6), and opinions, including some by this court, often use the two interchangeably." Id.

## III. CONCLUSION

For the foregoing reasons, this court grants defendant's motion to dismiss in part. The official capacity claims against defendants Funk, Shute, Dahiya, and Ngu are dismissed. All claims against Appleyard, Mesrobian, and Wexford are dismissed. The remainder of defendants' motion is denied.

Date: 8/13/2013　　　　　　　　　　　　ENTER:

　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　FREDERICK J. KAPALA

　　　　　　　　　　　　　　　　　　　District Judge